IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW DURAN,

    Petitioner,               No. CIV-S-04-0867 GEB KJM P

    vs.

CLAUDE FINN,

    Respondent.           FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges his fifth denial of parole, which occurred in 2001.

I. Background

        Petitioner pled guilty to second degree murder on July 2, 1982 and was sentenced to fifteen-years-to-life imprisonment in the California Department of Corrections and Rehabilitation. Answer, Ex. 1. On July 5, 2001, petitioner attended his fifth parole hearing. At

/////
/////
/////
/////

the conclusion of the hearing, the California Board of Prison Terms rendered the following decision:

> The Panel has reviewed all of the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The offense was carried out in an especially cruel and callous manner. It was carried out in a dispassionate and calculated manner and the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering. The motive for the crime was inexplicable or very trivial in relation to the offense. These conclusions are drawn from the Statement of Facts wherein the prisoner was involved as a gang member and retaliated when he had been superficially stabbed by another gang member by seeking out the other gang and being part of a shooting that killed the victim. . . The Panel is very impressed with you but the bottom line with your parole plans the way they are and with you still having a class score of 28[1] that is going to be – a couple of things that are going to weigh with other people who are going to be reviewing this. In taking a look at your parole plans you maybe have to not depend so much upon family as depending upon a Christian home[2] that you could go to, making sure you get a letter from them and then looking at self-help groups and everything and then the other letters of support that you can get and it's just kind of whether you're on the inside or the outside people have difficulties as attested to by your brother going through the divorce so you'll have to make sure that you have plans that will carry through on your own. We've been very impressed with everything that you have been doing and you have come a long time in taking care of things. We noted that you've had no discipline since 1986. You've done everything as far as the self-help groups and the things - - We had talked about them before. The vocational that you have, I think you're well prepared to be

/////

/////

---

[1] The classification score is used to determine the proper custody level and placement for inmates. Stoneham v. Rushen, 137 Cal. App. 3d 729, 731 (Cal. Ct. App. 1st Dist. 1982). A higher classification score indicates greater security control needs. In re Richards, 16 Cal. App. 4th 93, 94 (1993); 15 Cal. Code Regs. § 3375. A score of 0 is the lowest possible, and is consistent with placement in a Level I, or minimum security, facility. See 15 Cal. Code Regs. § 3375.1.

[2] During the hearing, petitioner indicated his desire to find a "Christian home to live in." Answer, Ex. 3 at 32:13-18.

> able to find employment so I might tell you that before you come before the Board again you might want to be writing letters to potential employers and here again not rely on anybody in your family to get a job for you but to really write some letters directly to employers letting them know what your skills are. And I know sometimes this is rather hard but whatever assistance that you can get from the Christian home that you want to go to and anything that you can get from your family. We do note that your parole plans are realistic right now and that you don't have a place to live and you really don't have employment set up.

Answer, Ex. 3 at 55-57. Petitioner was 16 when he committed the crime for which he was sentenced to prison. Answer, Ex. 3 at 12:2-8.

Petitioner challenged his being denied parole for the fifth time at all three levels of California's courts. Both the Superior Court of San Diego County and the California Court of Appeal issued reasoned decisions with respect to petitioner's challenge. Answer, Exs. 5 & 6.

II. Habeas Corpus Standard

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Also, federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (referenced herein in as "§ 2254(d)" or "AEDPA). See Ramirez v. Castro, 365 F.3d 755, 773-75 (9th Cir. 2004) (Ninth Circuit affirmed lower court's grant of habeas relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and therefore did

not address the merits of petitioner's Eighth Amendment claim).[3]  Courts are not required to address the merits of a particular claim, but may simply deny a habeas application on the ground that relief is precluded by 28 U.S.C. § 2254(d).  Lockyer, 538 U.S. at 71 (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir. 2003) in which the Ninth Circuit required district courts to review state court decisions for error before determining whether relief is precluded by § 2254(d)).  It is the habeas petitioner's burden to show that he is not precluded from obtaining relief by § 2254(d).  See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are different.  As the Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams [v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002).  A state court does not apply a rule different from the law set forth in Supreme Court cases, or unreasonably apply such law if the state court simply fails to cite or fails indicate an awareness of federal law.  Early v. Packer, 537 U.S. 3, 8 (2003).

The court will look to the last reasoned state court decision in determining whether the law applied to a particular claim by the state courts was contrary to the law set forth

---

[3] In Bell v. Jarvis, 236 F.3d 149, 162 (4th Cir. 2000), the Fourth Circuit Court of Appeals held in a § 2254 action that "any independent opinions we offer on the merits of constitutional claims will have no determinative effect in the case before us . . . At best, it is constitutional dicta."  However, to the extent Bell stands for the proposition that a § 2254 petitioner may obtain relief simply by showing that § 2254(d) does not preclude his claim, this court disagrees.  Title 28 U.S.C. § 2254(a) still requires that a habeas petitioner show that he is in custody in violation of the Constitution before he or she may obtain habeas relief.  See Lockyer, 538 U.S. at 70-71; Ramirez, 365 F.3d at 773-75.

in the cases of the United States Supreme Court or whether an unreasonable application of such law has occurred. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court fails to give any reasoning whatsoever in support of the denial of a claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). In other words, the court assumes the state court applied the correct law, and analyzes whether the decision of the state court was based on an objectively unreasonable application of that law.

It is appropriate to look to lower federal court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

III. Parole In California

In Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 11 (1979), the United States Supreme Court found that an inmate has "no constitutional or inherent right" to parole, even when a state establishes a system of conditional release from confinement. The Court recognized, however, that the structure of parole statutes might give rise to a liberty interest in parole that would, in turn, mean an inmate was entitled to certain procedural protections. Id. at 14-15. In Greenholtz, the Court found that the "mandatory language and the structure of the Nebraska statute at issue" created such a liberty interest. Board of Pardons v. Allen (Allen), 482 U.S. 369, 371 (1987).

In McQuillion v. Duncan, 306 F.3d 895 (9th Cir. 2002), the Ninth Circuit used the Greenholtz-Allen framework to determine whether California statutes created a liberty interest in

/////
/////
/////
/////

parole. The critical statute at issue in McQuillion is California Penal Code section 3041, which provides in relevant part:

> (a) In the case of any prisoner sentenced pursuant to any provision of law, other than [the determinate sentencing law], the Board of Prison Terms shall meet with each such inmate during the third year of incarceration for the purposes of reviewing the inmate's file, making recommendations, and documenting activities and conduct pertinent to granting or withholding post-conviction credit. One year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the Board of Prison Terms shall again meet with the inmate and shall normally set a parole release date as provided in Section 3041.5.[4] The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the prisoner was sentenced and other factors in mitigation or aggravation of the crime....
>
> (b) The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting.

The Ninth Circuit found that subdivision (b) was like the statutes in both Greenholtz and Allen:

> California's parole scheme gives rise to a cognizable liberty interest in release on parole. The scheme "'creates a presumption that parole release will be granted'" unless the statutorily defined determinations are made.

McQuillion, 306 F.3d at 901-02. Again in Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003), the Court of Appeals reiterated its holding that the California parole scheme created a liberty interest in parole, noting that "California Penal Code § 3041(b) controls" the resolution of the question because its "language clearly parallels the language" under consideration in Greenholtz

---

[4] Cal. Penal Code § 3041.5 establishes procedural requirements for Board hearings.

6

and Allen.  See also In re Rosenkrantz, 29 Cal.4th 616, 654 (2002), cert. denied, 538 U.S. 980 (2003) (discussing § 3041(b), the California Supreme Court noted "parole applicants . . . have an expectation that they will be granted parole unless the Board finds . . . that they are unsuitable in light of the circumstances specified by statute and regulation"); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006).

        The existence of a liberty interest means that a decision to deny parole must be supported by some evidence and not be otherwise arbitrary.  Superintendent, Massachusetts Correctional Institute, Walpole v. Hill, 472 U.S. 445, 457 (1985); Jancsek v. Oregon Board of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  The test is "not whether some evidence supports the *reasons* . . . for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety."  In re Lee, 143 Cal.App.4th 1400, 1408 (2006) (emphasis in original).  The evidence must have some indicia of reliability.  Biggs, 334 F.3d at 915.  The "some evidence" requirement is a "minimally stringent" standard and does not require the court to reweigh the evidence or examine the entire record.  Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994); Hill, 472 U.S. at 455-56.

> [The] analysis is framed by the statutes and regulations governing parole suitability determinations . . . . [W]e must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" [] constituted an unreasonable application of the "some evidence standard" principle articulated in *Hill*.

Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007).

        The Board's regulations for setting parole release dates are found in title 15 of the California Code of Regulations.  Section 2401 of this title provides:

> A life prisoner shall be considered for parole for the first time at the initial parole consideration hearing scheduled as provided in Section 2268. A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section

2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.

In setting the parole date the panel shall consider the Sentencing Rules for the Superior Courts. The panel shall also consider the criteria and guidelines set forth in this article for determining the suitability for parole and the setting of parole dates, considering the number of victims of the crime for which the prisoner was sentenced and any other circumstances in mitigation or aggravation.

The terms in this article are guidelines only. The suggested terms serve as the starting point for the board's consideration of each case on an individual basis. The board may establish a term above or below the guidelines when warranted and reasons are stated on the record. A prisoner shall not be released before the minimum eligible parole date.

15 Cal. Code Regs. § 2401.

Section 2402 provides:

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

       (3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

       (4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

       (5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

       (6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

       (7) Age. The prisoner's present age reduces the probability of recidivism.

       (8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

       (9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

15 Cal. Code Regs. § 2402.

       Once the Board determines that an inmate is suitable for parole, it proceeds to set a date for the inmate's release, based on numerous factors provided in sections 2403 through 2411. The paramount concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal.4th 1061, 1080, 1084, 1085, 1086 (2005) ("the overriding statutory concern" is for public safety; purpose of the statutes is to "guarantee that the Board has fully addressed the public safety implications" of the release determination).

IV. <u>Liberty Interest In Parole</u>

       Respondent argues that because petitioner has no liberty interest in parole, the denial of parole raises no federal question. The Ninth Circuit has found such an interest and, as noted above, has repeatedly reaffirmed this conclusion. Sass, 461 F.3d at 1128; McQuillion, 306 F.3d at 901.

V. Arguments And Analysis

    A. Commitment Offense[5]

Petitioner asserts the primary reason he was denied parole is the nature of his commitment offense, which occurred in 1981. Pet. at 8:8-10[6]; Traverse at 12. Petitioner asserts that justifying the denial in this way violates his right to due process under the Fourteenth Amendment. Id. The Superior Court of San Diego County found that, under California law, petitioner could be denied parole based upon the circumstances surrounding his commitment offense, as long as the Board also considered all other relevant factors. Answer, Ex. 4 at 2:11-21. The Superior Court in fact found the Board did not base its decision on the commitment offense alone, but also on petitioner's parole plans and his classification score. Id. at 2:22-3:2.

A fair reading of the Board's decision to deny petitioner parole discloses that the Board did not deny petitioner parole merely based on the facts of petitioner's commitment offense. The Board also cited the fact that petitioner did not have a place to live upon release and had not arranged for employment, both factors the Board may properly consider. See 15 Cal. Code Regs. § 2402(b); cf. id. § 2402(d)(8). Petitioner does assert in his traverse that he could have lived in Los Angeles with his wife. Traverse at 9:14-19. While the transcript of petitioner's parole hearing indicates petitioner expressed a desire to live with his wife, petitioner did not inform the Board that he had a residence where he and his wife could live together in Los Angeles. Answer, Ex. 3 at 32:12-33:3. At the hearing, petitioner did inform the Board he wished to parole in San Diego, but had not obtained a residence there after his plans to live with his brother fell apart in light of the brother's divorce. Id. at 31:24-32:8.

/////

---

[5] To the extent the court does not address claims addressed by petitioner in his habeas petition, such claims fail to state a cognizable claim or are duplicative of the claims actually addressed.

[6] Citations to page numbers of the petition are to pages as they would be numbered consecutively, beginning with the first cover page as page 1.

1    The Board also cited petitioner's prison disciplinary record in prison as a basis for
2 denying parole.  Prior to 1986, petitioner was disciplined for assaulting prison staff, possessing
3 alcohol on three occasions, and engaging in inappropriate conduct in the visiting room.  Answer,
4 Ex. 3 at 25:14-26:19.  The Board is authorized to consider this factor as one tending to show
5 unsuitability for release.  15 Cal. Code Regs. § 2401(b) & (c)(6).
6    To the extent petitioner argues there was not "some evidence" to support the
7 Board's finding that petitioner was not suitable for parole, the record is to the contrary.
8 Petitioner's commitment offense, his disciplinary record in prison and his lack of concrete parole
9 plans taken together provide the requisite "some evidence."  Given petitioner's past, including
10 his involvement in a street gang, it is not unreasonable for the Board to require that petitioner
11 have firm parole plans, including a place to live and a job, before deeming petitioner's release
12 from prison a reasonable risk.  Moreover, petitioner fails to point to any Supreme Court authority
13 suggesting this court is not precluded by 28 U.S.C. § 2254(d) from upsetting the Superior Court's
14 decision.  For all the foregoing reasons, relief is precluded by 28 U.S.C. § 2254(d).
15    B.  Maximum Discharge Date
16    Petitioner also asserts he must be released because he has passed the maximum
17 discharge date provided for under his sentence.  Pet. at 8:16-18.  However, as recognized by the
18 California Court of Appeal, petitioner's claim must rejected because he was given an
19 indeterminate sentence.  Answer, Ex. 5.  In other words, the Board of Prison Terms has the
20 authority to determine when petitioner will be released.  Cal. Penal Code §§ 1168(b) & 3040.
21 While petitioner has a due process right to be considered for parole under California's parole
22 statutes, he does not have an absolute right to be released as he suggests.  Cal. Penal Code § 3040
23 et seq.; McQuillion v. Duncan, 306 F.3d 895, 901-02 (9th Cir. 2002) (confirming authority of
24 Parole Board to grant release).
25 /////
26 /////

C. Proportionality

Throughout his petition, petitioner argues he has had to serve more time than people who have committed more serious offenses. Petitioner does not challenge his actual sentence of fifteen-years-to-life. He appears to challenge the execution of his sentence in relation to sentences served by other inmates. Specifically, he asserts his continued incarceration violates his right to a proportionate sentence under the Eighth Amendment and his right to equal protection of the laws under the Fourteenth Amendment. See, e.g., Pet. at 8:18-9:5, 11:14-12:5.

Again, petitioner is serving an indeterminate sentence. Whether he will be released is governed by California's parole regulations and the discretion of the Board of Prison Terms. To the extent petitioner asserts inmates with similar parole qualifications have received parole while petitioner has not, petitioner has not presented facts to support his claim.

D. Plea

Petitioner's final argument appears to be that his being denied parole in 2001 violates his plea agreement. Pet. at 16-17. Respondent argues correctly that petitioner has failed to exhaust state court remedies with respect to this claim, which is a prerequisite to obtaining relief. 28 U.S.C. § 2254(b)(1); cf. Answer, Ex. 7 (California Supreme Court petition not including claim). Nevertheless, the court may address a petitioner's claim "when it is perfectly clear that the petitioner has no chance of obtaining relief." Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 1336 (2006); see also 28 U.S.C. § 2254(b)(2). Having considered the record on the instant petition, the court finds the Cassett standard has been satisfied, and thus addresses this claim below.

Petitioner's claim consists of the bare assertion, that "[u]nder the plea agreement [he] was to plead guilty and be sentenced to 15 years to life and be sent to (CYA) and he would only have to serve 5 years." Pet. at 16. He offers nothing in support of the claim; rather, the only thing in the record even remotely related to the subject matter of the claim is the abstract of judgment demonstrating petitioner's commitment to the Department of Corrections, not the

CYA.  Id., Ex. 1 (amended abstract of judgment reflecting 15-years-to-life as sentence).  Relief should be denied.  See Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief'" (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994)).

VI.  Conclusion

        For the foregoing reasons, the court will recommend that petitioner's application for writ of habeas corpus be denied.

        In accordance with the above, IT IS HEREBY RECOMMENDED that all of the claims in petitioner application for writ of habeas corpus be denied.

        These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 7, 2007.

_____
U.S. MAGISTRATE JUDGE

---

1
dura0867.157